**BEVELOCK & FISHER LLC**
Charles M. Fisher, Esq. (cfisher@bevelocklaw.com)
Gregory J. Bevelock, Esq. (gbevelock@bevelocklaw.com)
14 Main Street
Suite 200
Madison, New Jersey 07940
(973) 845-2998
Attorneys for Defendant
State Farm Fire and Casualty Company

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANTHONY J. VITALE, DMD AND PERSONAL CHOICE DENTAL ASSOCIATES. PA,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Defendant. | Civil Action No.<br><br><br><br>**NOTICE OF REMOVAL** |

**TO:**  Clerk, United States District Court
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

Douglas J. Widman, Esq.
Davison, Eastman, Munoz, Lederman & Paone, P.A.
Monmouth Executive Center
100 Willow Brook Road, Suite 100
Freehold, New Jersey 07728
Attorneys for Plaintiffs

**PLEASE TAKE NOTICE** that defendant State Farm Fire and Casualty Company ("State Farm"), an Illinois corporation with its principal place of business at One State Farm Plaza, Bloomington, Illinois 61710, by its undersigned counsel, has filed this Notice of Removal pursuant to 28 U.S.C. §§ 1441, 1446, and 1332, with the Clerk of the United States District Court for the District of New Jersey.

**PLEASE TAKE FURTHER NOTICE** that pursuant to 28 U.S.C. § 1446(a), State Farm hereby sets forth a short and plain statement of the grounds for removal as follows:

1. Plaintiffs commenced this action by filing a complaint against State Farm in the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. MON-L-1137-18, on or about March 30, 2018.

2. Copies of the summons and complaint were first received by State Farm on April 12, 2018. This was the first notice of this action received by State Farm.

3. A copy of the summons and complaint is attached as Exhibit A. Other than copies of the summons and complaint described above, there has been no service of other process, pleadings, or orders in this action.

4. This action is a civil action which may be removed under the provisions of 28 U.S.C. § 1441, and over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332, in that (a) there exists diversity of citizenship between plaintiffs and State Farm, and (b) the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## CITIZENSHIP OF PARTIES

5. Upon information and belief, plaintiffs Anthony J. Vitale, DMD and Personal Choice Dental Associates, P.A. ("plaintiffs") are both citizens of New Jersey. Plaintiffs' complaint alleges that plaintiff Anthony J. Vitale, DMD "is a natural person doing business at 400 Perrine Road, Suite 400A, Old Bridge, NJ 08857." (Compl., ¶1). Moreover, the Certificate of Good Standing for Personal Choice Dental Associates, P.A., filed with the State of New Jersey, Department of the Treasury, lists Anthony Vitale as President, with an address of 26 Timber Lane, Manalapan, New Jersey 07726.

6. Plaintiffs' complaint further alleges that plaintiff Personal Choice Dental Associates, P.A. "is a New Jersey professional corporation with a primary place of business located at 400 Perrine Road, Suite 400A, Old Bridge, NJ 08857." (Ibid.). Plaintiff Personal Choice Dental Associates, P.A. is therefore a citizen of New Jersey for purposes of federal jurisdiction. 28 U.S.C. § 1332(c)(1).

7. State Farm is an insurance company incorporated in Illinois and has its principal place of business located at One State Farm Plaza, Bloomington, Illinois. State Farm is therefore a citizen of Illinois for purposes of federal jurisdiction. 28 U.S.C. § 1332(c)(1).

## AMOUNT IN CONTROVERSY

8. The amount in controversy exceeds $75,000, exclusive of interest and costs. More specifically:

   a. Plaintiffs' complaint alleges that on April 2, 2016, their property located at 400 Perrine Road, Suite 400A, Old Bridge, New Jersey suffered "a catastrophic flood." (Compl., Count I, ¶10). The complaint further alleges that "[d]ue to the catastrophic flood, Dr. Vitale and Personal Choice's business operations at the Business Premises were interrupted." (Id., ¶11).

   b. In Count One, plaintiffs allege a claim for "Breach of Contract." Plaintiffs allege that State Farm breached its contractual obligations because it failed "to pay Dr. Vitale and Personal Choice's actual loss in connection with the catastrophic flood…" (Id., ¶19). More specifically, plaintiffs allege that State Farm "arbitrarily and capriciously ended coverage [for business interruption] on or about October 31, 2016, even though at that time and for a time after that date, both Dr. Vitale and Personal Choice continued to suffer business interruption losses." (Id., ¶13). As a result of the alleged breach of contract, plaintiffs seek a judgment against State Farm "along with an award of costs and attorneys' fees and for such other and further relief the court deems just and proper." (Id., Count I, WHEREFORE Clause).

      c.      In Count Two, plaintiffs allege a claim for "Bad Faith."  Plaintiffs allege that "State Farm and/or its employees either intentionally or, in the alternative, negligently failed to investigate Dr. Vitale and Personal Choice's claim in a prompt and thorough manner as they were required to do and, as a direct and proximate result, Plaintiff (sic) has suffered monetary damages and will suffer monetary damages in the future."  (Compl., ¶26).  As a result of the alleged bad faith, plaintiffs seek a judgment against State Farm "along with an award of costs and attorneys' fees and for such other and further relief the court deems just and proper."  (Id., Count II, WHEREFORE Clause).

      d.      With regard to their breach of contract claim, State Farm has paid plaintiffs approximately $250,000 for business interruption benefits for the water loss that is the subject of this litigation, at the approximate rate of $35,000 per month.  Plaintiffs, however, claim they are entitled to recover additional business interruption benefits.  Indeed, in Count Two of their complaint, plaintiffs allege they "continued to suffer actual business interruption losses long after October 31, 2016, at which time State Farm discontinued paying indemnity."  (Compl., ¶22) (emphasis added).  Upon information and belief, plaintiffs seek additional business interruption benefits for the time State Farm spent investigating a mold claim, as well as the time it would take plaintiffs to remediate the mold, which would translate to benefits of at least $100,000.

      e.      With regard to their bad faith claim, plaintiffs are seeing damages which could include punitive or exemplary damages, which must be considered in determining the amount-in-controversy.  Frederico v. Home Depot, 507 F.3d 188, 198-99 (3rd Cir. 2007).  Under New Jersey law, punitive damages are limited to a maximum sum of five times the amount of compensatory damages, or $350,000, whichever is greater.  Id. at 199; see also N.J.S.A. 2A:15-

5.14(b).  When calculating the contribution of a punitive damages claim to the amount in controversy, courts generally set a number corresponding to the statutory limit under state law, if one exists, or the due-process benchmarks established by the United States Supreme Court.  See e.g., Frederico, 507 F.3d at 199 (applying New Jersey limit); Harvey v. U.S. Life Ins. Co., 2008 WL 2805608, at *2 (E.D. Pa. July 18, 2008) (citing State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003), for its rule-of-thumb that a punitive damages "award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety[,]" and denying remand).  Thus, even where a request for compensatory damages appears or is below the jurisdictional minimum, the amount in controversy requirement has been satisfied when punitive damages are also sought.  See e.g., Zanger v. Bank of Am., 2010 WL 3910142, at *3-4 (D.N.J. 2010) (holding that amount in controversy requirement was satisfied where claim was only for approximately $16,000 in compensatory damages but punitive damages also were sought); Valley v. State Farm Fire & Cas. Co., 504 F.Supp.2d 1, 2-4 (E.D. Pa. 2006) (holding that amount in controversy requirement was satisfied where claim was only for approximately $31,446 in compensatory damages but punitive damages, attorneys' fees, and damages for bad faith were also sought).

9.  Plaintiffs' claim for attorneys' fees must also be considered in determining the amount-in-controversy.  Frederico, supra, 507 F.3d at 198-99.  In Frederico, the Third Circuit added thirty percent to its calculation of possible damages as an estimate of the amount of fees "in controversy."  Id. at 197-99.  Doing so here would further increase the amount in controversy even further beyond the jurisdictional minimum.

10. Accordingly, for all these reasons, a reasonable reading of the rights being litigated reveals that the amount in controversy exceeds the jurisdictional minimum amount of $75,000, exclusive of interest and costs.

11. Finally, in taking this position, State Farm does not concede that plaintiffs are entitled to recover, but only that the amount placed in controversy by plaintiffs exceeds the jurisdictional threshold.

12. This Notice of Removal is being filed within 30 days of State Farm's receipt of the complaint through service or otherwise, as provided by 28 U.S.C. § 1446(b).

**PLEASE TAKE FURTHER NOTICE** that State Farm, upon filing the Notice of Removal with the Office of the Clerk of the United States District Court for the District of New Jersey, shall give prompt written notice thereof to plaintiffs, and shall file a copy of this Notice of Removal with the Clerk of the Superior Court of New Jersey, Law Division, Monmouth County, to effect removal of this action to the United States District Court pursuant to 28 U.S.C. § 1446(d).

**PLEASE TAKE FURTHER NOTICE** that State Farm hereby specifically preserves and incorporates herein all affirmative defenses enumerated in Fed. R. Civ. P. 12(b)(1)-(6) and 12(h).

        **BEVELOCK & FISHER LLC**
        Attorneys for Defendant
        State Farm Fire and Casualty Insurance Company


        By:/s/Charles M. Fisher
            Charles M. Fisher

Dated: May 9, 2018